## Smith v. Clopton.

### SMITH V. CLOPTON.

Where a party promised in writing to pay so much an acre for so many acres as, &c., and at a subsequent time indorsed the number of acres, and fixed the amount to be paid: *Held*, That the instrument was a promissory note from the time of the indorsement.
The only inquiry to be made is whether the facts of the case are such as to entitle the party to a judgment in his favor, in either law or equity; and if he have rights cognizable by either, such relief will be adjudged by the court as the nature of the case demands. (Note 24.)
Our laws recognise the negotiability of promissor notes. Where the assignment is in writing, there can be no question of the rights of the assignee to bring the action in his own name; and where an instrument payable to bearer is transferred by delivery, the right of the assignee seems on principle to be equally clear. (Note 24.)
*Quere*, as to the cases in which the vendee may resist the payment of the purchase-money, on the ground of defect of title in the vendor. (Note 25.)
Where there is no proof to the contrary, a negotiable instrument in the hands of a third person will be presumed to have been transferred before maturity.

Appeal from Bastrop. Clopton, as bearer of the following instrument in writing, sued Smith in a Justice's Court:

" On or before the first day of January next, I promise to pay W. B. Wal-
" drop or bearer one dollar and fifty cents for each and every acre of land
" which lies north (that is to say) above Walnut Creek, which said Waldrop
" has this day sold to me, being part of the land which was sold unto the said
" Waldrop by L. C. Cunningham, the said land being the consideration of
" this note; and if this note is not paid promptly at maturity, it shall draw in-
" terest at the rate of ten per cent. per annum until paid.    Witness: L. C.
" CUNNINGHAM.

THOMAS SMITH.

"BASTROP, *April 15th*, 1848.

"Since the within was written, the land has been surveyed and found to be
" sixty-five acres, which will make the within call for $97.50.

"THOMAS M. SMITH.

"BASTROP, *Nov. 10th*, 1848."

Clopton recovered judgment in the Justice's Court, and Smith appealed to the District Court, where Clopton again [110] recovered judgment.    The only evidence besides the instrument sued on was that the legal title to the land for which the note was given was in the witness Cunningham; that Smith knew it at the time; that he took Waldrop's bond to make title as soon as the note was paid, and that he had ever since been in possession of the land.

*Sneed & Oldham*, for appellant.

I. The instrument sued on is not a promissory note, but an agreement. (Bayley on Bills, 12; Smith *v.* Nightingale, 2 Stark. R., 373; Ellis *v.* Ellis, Gow., 216.)
II. Clopton held the instrument sued upon as bearer.    He could not maintain a suit upon it as such.    By the law merchant, which may be considered part of the common law, bills of exchange were the only instruments transferable by delivery so as to vest in the holder a right of action upon them. The instrument in this case, if not a promissory note, does not come within the provisions of the statute of 3d and 4th Ann. Chan., 9, s. 1; and if a promissory note, that statute is not in force here.    The negotiable quality of every written instrument, save bills of exchange, must depend upon some positive statute. Our statute of 1840 does not authorize the transfer by delivery of an instrument payable to bearer.
Equity has no jurisdiction of such a case.    Courts of equity, it is true, as well as courts of law, will take notice of assignment of papers not negotiable, and afford them every protection not inconsistent with the principles and proceedings of tribunals acting according to the course of the common law. (Mandiville *v.* Welsh, 3 Cond. R. S. C. U. S., 554; Andrews *v.* Beecher, 1 Johns.

## Smith v. Clopton.

Cas., 411; Littleford *v.* Story, 3 Johns. R., 426; Wardell *v.* Eden, 2 Johns. Cas., 121; Raymond *v.* Squier, 11 Johns. R., 47; 1 Wash. C. C. R., 424.)

III. The instrument sued on and the bond of Waldrop for title are but parts of an entire contract. The stipulations are dependent. (Hunt *v.* Livermore, 5 Pick. R., 395; Sexton *v.* Wood, 17 Pick. R., 110; Cunningham *v.* Gwinn, 4 Blackf., [111] 312; Tarpley *v.* Poage's Ad., 2 Tex. R., 139.) The vendor having no title, could convey none. But admitting that Waldrop had a good title to the land and was able to convey, still he could not sustain an action for the recovery of the purchase-money without having executed a conveyance or offered to do so. (Sug. Vend., 229; 1 Pet. R., 455; Green *v.* Reynolds, 2 Johns. R., 207; Parker *v.* Parmale, 20 Johns. R., 130; Hudson *v.* Swift, 20 Johns. R., 24; Jones *v.* Gardiner, 10 Johns. R., 266; Fulton *v.* Hubbard, 6 Cow. R., 13; Fuller *v.* Williams, 7 Cow. R., 53; Fauchot *v.* Leach, 5 Cow R., 506; Blood *v.* Goodrich, 9 Wend. R., 68; Love *v.* Jones, 4 Watts., 465; Dearth *v.* Williamson, 2 S. & R. R., 50; Withers *v.* Alkeason, 1 Watts R., 236; 3 Rawle R., 393; Withers *v.* Beard, 7 Watts R., 227; Leonard *v.* Bates, 1 Blackf., 172.)

IV. Suit being brought in the name of the assignee or bearer does not alter the case. He took it subject to all the equities subsisting between the assignor and debtor. (2 Story Eq., 311.)

*Poage,* for appellee, argued that the payment of the money was a condition precedent to the making of the title. The appellant executed the note sued on, payable " on or before " a particular day, and accepted Waldrop's bond to make a title after the payment of the money. (Gibson *v.* Newman, 1 How. Mi. R., 341; Leftwich *v.* Coleman, 3 Id., 167; Owen *v.* Norris, 5 Blackf. R., 479; 6 Cow. R., 538; 1 Sug. Vend., 272, 6th Am. Ed.; 1 N. Y. Dig., 258, 261.)

II. Waldrop could make title, although it was in a third person. (2 Sug. V., 27, 6th Am. Ed.; Trask *v.* Vinson, 20 Pick. R., 111.)

III. The appellant entered into possession of the land and has kept possession under the purchase. (Ayres *v.* Pease, 12 Wend. R., 393; 2 Sug. V., 8, 6th Am. Ed.; 1 Madd. Ch., 440; Hoy *et al. v.* Taliaferro, 8 S. & M. R., 727; Duncan *et al. v.* Lane, Id., 744.)

[112] IV. This court has decided that the holder or bearer of a note is *prima facie* owner thereof, and can maintain an action on it in his own name. (Ogden *v.* Slade, 1 Tex. R., 13.)

HEMPHILL, Ch. J. The first position contended for by appellant is that the instrument sued on is not a promissory note, and if a promissory note, it is not, according to the laws of this State, negotiable, nor does it vest such rights in Clopton as are required by the holders of instruments made negotiable by the law merchant or by statute.

The objection to its being regarded as a promissory note, from the circumstance that no precise sum was, in its original formation, designated as the amount to be paid, we consider as obviated by the fact that this was ascertained and acknowledged on the same instrument, under the signature of the maker, before the note arrived at maturity. This acknowledgment conferred upon it certainty as to the amount, the only requisite wanting to constitute it a commercial negotiable instrument; and from the date of the admission it became the promissory note recognized by our laws as having the quality of negotiability and other incidents pertaining to mercantile paper by the usages of the law merchant.

It is urged that if it even be a promissory note, yet it does not possess the privilege of negotiability conferred on such instruments by the statute 3 and 4 of Anne, c. 9, which is not in force in this State, nor any one containing similar provisions. It is true that we have no statute which in direct terms declares, as does the English statute in substance, that a " note, payable to a " person or persons, his, her, or their order, shall be assignable over in the " same manner as inland bills of exchange are or may be by the custom of

## Smith v. Clopton.

merchants," &c.   But it is a misapprehension to suppose that the laws of this State do not recognize the negotiability of promissory notes.   These instruments were, under the laws in force before 1840, negotiable, but with some restrictions not necessary to be specified.   On the introduction of the common [113] law, they were, by the "act to dispense with the necessity of protesting negotiable instruments," &c., (Acts of 1840, 145,) described as "mercantile negotiable instruments," and as such were contradistinguished from other written instruments not assignable by the usages of commercial law.   Bills of exchange and promissory notes are, in the first section of the statute, classed as "mercantile negotiable instruments," and by the second any person to whom any of the "aforesaid negotiable instruments may have been assigned may thereupon maintain an action in his own name," &c.; and "should he obtain such instrument before its maturity, by giving for it a valuable consideration, and without notice of any discount or defense against it, then he shall be compelled to allow only the just discounts against himself."   A promissory note is treated by this statute as negotiable and as possessing the privilege of relieving the holder, by transfer before maturity, from the defenses which might be set up by the maker against the original payee of the note.

At the request of the counsel, we have examined the decision in the case of Ogden v. Slade, (1 Tex. R., 13,) and can perceive no error in the position that under our system of procedure an assignee of a note not negotiable is entitled to sue in his own name, or in his own name to discount such note against the demand of the plaintiff.   Before the introduction of the common law the distinction between law and equity was altogether unknown.   The parties stated their causes of complaint and grounds of defense, and on the allegations and proofs such relief was afforded as they were entitled to under any and all the laws of the land, without reference to the peculiarity of the English system of jurisprudence which rendered the rights of parties, or at least their relief, dependent not only upon the facts of their case, but also upon the *forum* in which redress was sought.   Upon the introduction of the common law the intention of the Legislature is manifest to prevent such distinction from being recognized; at least to an extent which deprive parties of any relief [114] to which they may be entitled under the rules and principles of either law or equity.   By the Constitution of the State and subsequent legislation the distinction between these two systems is in a great measure, if not totally, disregarded. The District Courts have jurisdiction of all suits, complaints, and pleas whatever, without regard to any distinction between law and equity.   "Jury trials "are to be allowed on application of the parties in equity cases."   (Art. 4, Const.)   All civil suits are to be commenced by petition, which must contain a clear statement of the cause of action and of the relief sought; (Acts of 1846, p. 365;) and the district judges are authorized, on an appropriate prayer for relief, to grant all such orders or writs or other process as may be necessary to obtain such relief; and may also so frame the judgments of the court as to afford all the relief which may be required by the nature of the case, and which is granted by courts of law or equity.   (Acts of 1846, p. 202.)   The only inquiry then to be made at the institution of a suit is whether the facts of the case are such as to entitle a party to a judgment in his favor in either law or equity; and if he have rights cognizable by either, such relief will be adjudged by the court as the nature of the case demands.   The rule that courts of equity will interfere only where the party is remediless at law has but little application under a system in which the litigants in a suit can demand and obtain all the relief which can be granted by either courts of law or equity.

With reference to the particular question under consideration, it seems to be of but little consequence whether an unnegotiable instrument be sued in the name of the payee, obligee, &c., or in that of the assignee.   By the third section of the act of 1840, above referred to, the assignee of any bond or written instrument not negotiable is authorized to maintain an action in his own name, allowing discounts and defenses to which it would have been subject in the hands of a previous owner.   When the assignment is in writing, there can be

## Smith v. Clopton.

no question of the right of the assignee to bring the action [**115**] in his own name; and where an instrument payable to bearer is transferred by delivery, the right of the assignee seems on principle equally clear. An assignment in writing of an unnegotiable chose in action has, under statutes somewhat similar to our own, been held to be a letter of attorney to the assignee, who may elect to regard himself in that character and sue in the name of the assignor or in his own, under the authority of the statute. (2 McCord's R., 274) And the transfer by delivery of such instruments as the one under consideration (on the supposition that it is not a negotiable promissory note) is regarded in courts of purely common-law jurisdiction as an authority for its collection, but in the name of the original payee. (2 Bailey R., 546.) The ground on which suit could not be brought nor discounts offered in the name of the assignee was from the fact that courts of common law could take notice only of legal rights. (2 Bailey R., 136.) This principle has no application to our system; and the reason of the rule no longer existing, the rule itself ceases to operate; and parties who have rights under the laws are entitled to have them sustained and enforced, whether they be legal or equitable. As before observed, the right of the assignee to bring a suit in his own name is of but little consequence, as he is subject to all the equities and defenses which exist against the previous owner.

The discussion of some of these points might with propriety have been waived, as not being absolutely necessary to the determination of the case; nor would they have been considered had our attention not been especially directed to them by the able argument of the counsel of the appellant.

The defendant has urged as a ground for the reversal of the judgment a want of title in the vendor; and could this defense be legally set up against the plaintiff, who is the holder of the note, it would be somewhat difficult to make a satisfactory disposition of the point under the circumstances of the case. It appears that the defendant was perfectly cognizant at the time of the sale of all the defects of the title. There [**116**] is no evidence of fraud or misrepresentation on the part of the vendor. On the contrary, the vendee was informed at the time of the sale that the "title" was in the witness, Cunningham, and there was a mutual understanding between witness, vendor, and vendee, at that time, that a title would be made on payment of the price; and this the witness declared he is still willing to execute on the performance of that condition. The vendor secured the vendee against loss by a bond of title, and the latter remains in undisturbed possession of the premises. It would seem that if there be any case in which a vendee, holding possession under an executory contract, as this is, for the sale of lands, cannot resist the payment of the purchase-money on the ground of the vendor's title being wholly defective, this is one. But adversely to this view, it may be argued that in executory contracts it is an undoubted principle that the purchaser has a right to resist the payment of the purchase-money or to have it refunded if paid, on the ground of defect of title in the vendor. (11 Johns. R., 525; 8 Humph. R., 519; 2 Johns. R., 519; 1 Hill's S. C. R., 326; 2 Rich. Eq. R., 320.) When the contract is executed and a conveyance has passed, it is held in perhaps most of the States that such defense cannot avail the vendee, unless he has been evicted or there is fraud in the transaction. (8 Humph. R., 519; 1 Johns. Chan. R., 213; 2 Johns. R., 519; 2 Rich. Eq. R., 336.)

In others this defense is considered available, whether the vendee be in possession by deed or by an equitable title. (1 N. & McC., 212; 2 N. McC., 199–204; 1 Rich. Eq., 52.) The fact of possession, according to these authorities, is of no consequence, as it is but that of a mere trespasser, who is accountable for the use and occupation to the real owner of the land. It would be without advantage to prosecute a further inquiry into the availability of this defense, if offered against the vendor under the circumstances of this case. A decision of the question is not necessary to a determination of this case; and we forbear the expression of an opinion, and especially as there might not be a full concurrence in any views which might be advanced.

The instrument sued on, having been decided to be a negotiable promissory note, must be presumed to have been transferred before maturity, there being no evidence to the contrary, and is therefore in the hands of the plaintiff, not subject to defenses which might well be pleaded in an action brought by the payee or assignee after the note became due.

The trial below was on an appeal from a magistrate. There were no pleadings in the case, nor was any of the evidence taken admissible, except the instrument sued upon, which proved itself. There was no foundation laid for the introduction of the proof by showing such circumstances as would .have subjected the plaintiff to the equities which were raised or supposed to exist against the vendor.

Judgment affirmed.

Note 23.—Douglass v. Neil, 37 T., 528.

Note 24.—The rule is the same where it is payable in other articles than money. (Hopkins v. Seymour, 10 T., 202.) The person having the legal title to a note may maintain the action, though the equitable ownership be in another. (Butler v. Robertson, 11 T., 142; Knight v. Holloman, 6 T., 153; Greneaux v. Wheeler, 6 T., 515; Claiborne v. Goeman, 15 T., 44; Rider v. Duval, 28 T., 622.) The possession of a promissory note, payable to another or order and not indorsed, does not constitute evidence of ownership, without proof of its transfer for value. (Ross v. Smith, 19 T., 171; Merrill v. Smith, 22 T., 53; Gregg v. Johnson, 37 T., 558; Ball v. Hill, 38 T., 237.)

Note 25.—In executory contracts for the sale of land, the vendee may resist the payment of the purchase-money, or have it refunded, if paid, on the ground of defect of title in the vendor. (Jones v. Taylor, 7 T., 240; Perry v. Rice, 10 T., 367; Neel v. Picket, 12 T., 137; Taul v. Bradford, 20 T., 261; Hurt v. McReynolds, 20 T., 595; Litt-efield r. Tinsley, 22 T., 259; same case, 26 T., 353; Baldridge v. Cook, 27 T., 565; Demaret r. Bennett, 29 T., 262; Gober v. Hart, 36 T., 139.) If the contract is executed, the vendee must show a superior outstanding title that he will be evicted, and that he did not know or intend to run the risk of the defect. (Cooper v. Singleton, 19 T., 260; Cook v. Jackson, 20 T., 209; Smith v. Nolen, 21 T., 496; Luckie v. McGlasson, 22 T., 282; Herron v. DeBard, 24 T., 181; Johnson v. Long, 27 T., 21; May v. Taylor, 27 T., 125; Lemmon v. Hanley, 28 T., 219; Tooke v. Bonds, 29 T., 419; Keep v. Simpson, 38 T., 203; Price v. Blount, 41 T., 472.)